## MANAHAN *v.* NOYES.

When a party seeks to rescind a contract entered into on fraudulent representations, he must return or offer to return the property acquired by such contract, within a reasonable time, and in such way as to place the property and the vendor substantially in the same condition as at the time the property was received.

In case of fraud by the vendor in a sale of real estate, whether a notice by the vendee in possession, of a refusal to retain and·pay for the property, given to the vendor four days after the completion of the contract, was a reasonable time, within the rule relating to the rescission of contracts, is a question of fact and not of law.

Assumpsit for money had and received will lie where a contract is rescinded, to recover the money paid under it.

Where A gave to B a five hundred dollar bill in order that B might change it and pay three hundred dollars of it to C, if the authority of B to pay such sum to C was countermanded by A before payment—*Held*, that all the money remained the property of A, who was entitled to recover it of B in an action of assumpsit for money had and received.

ASSUMPSIT, by Hannah Manahan against John W. Noyes, for money had and received.

The case was referred to an arbitrator, who found for the defendant, subject to the opinion of the court, on the following facts:

The plaintiff, who was a resident of Massachusetts, bargained with the agent of one Mrs. Haseltine for certain real estate, situated in Chester, N. H., together with certain articles of personal property, for an entire sum of $1,000. A description of said real estate was published in the Boston *Herald*, which came to the plaintiff's notice, and which contained material misrepresentations as to the productiveness of said real estate. The deed of said real estate was to be taken in the name of the plaintiff, who was a married woman, and she was to make a cash payment towards‸said purchase, and was to secure the balance of the purchase money by a mortgage. The plaintiff came to Chester upon a Monday morning to complete these transactions, but her husband did not accompany her. A deed was written by the defendant, and executed by Haseltine and his wife; and the plaintiff then

paid to Haseltine a five hundred dollar bill, with the request to take from it the sum of $300, being the amount of the cash payment which was to be made; but Haseltine being unable to change said bill, the same was given to the defendant that he might change it, and pay the $300 to Haseltine and the balance to the plaintiff. The mortgage deed was not written, because the plaintiff's husband was not present to execute it. The parties separated, leaving the $500 with Noyes; and the next morning he paid to the brother of the plaintiff $200, and retained the balance until after the commencement of this action, and the deed was left with the defendant to be delivered upon execution of the mortgage. The plaintiff then immediately took possession of said real estate, and remained in occupation from said Monday until the Thursday following. The plaintiff was first informed, by a neighbor, of said misrepresentations as to the productiveness of said farm, on the Monday she took possession of the same, and while her goods were being removed to said place. When the plaintiff's husband came to Chester on the Thursday following, he refused to sign a mortgage deed; and the plaintiff then notified Mrs. Haseltine that she should not keep said place, and demanded of the defendant said sum of $300, which was then in his hands.

The referee found, as matter of law, that, the plaintiff having taken substantial possession of said estate, and having retained occupation of it from Monday until Thursday, this action was misconceived.

The questions of law were reserved.

*C. G. Bartlett*, for the plaintiff.

1. Contracts entered into upon fraudulent representations, are voidable at the election of the party defrauded. *Jones* v. *Emery*, 40 N. H. 348; *Woods* v. *Kirk*, 28 N. H. 329. Fraud avoids a contract, *ab initio*, both at law and in equity. Chitty on Con. 586, *a* (8th Am. ed., 1851). Actual misrepresentation of the seller avoids the sale. 1 Hilliard on Vendors 324.

2. The principal is liable for the misrepresentations and frauds of an agent. Story on Agency, sec. 452, *v* 3; 1 Parsons on Con. 62; Chitty on Con. 587; *Concord Bank* v. *Gregg*, 14 N. H. 340; *Hatch* v. *Taylor*, 10 N. H. 538; 1 Hilliard on Vendors 337.

3. The material misrepresentations as to the productiveness of this real estate made in the bargain for the sale of the same, was a fraud upon the plaintiff which entitled her to rescind the contract—*Concord Bank* v. *Gregg*, 14 N. H. 336; *Newell* v. *Horn*, 45 N. H. 422; *Coon* v. *Atwell*, 46 N. H. 510, and the authorities cited in said cases; 1 Hill. on Vendors 335;—and the plaintiff, being in no fault, elected to rescind the contract, and demanded the $300 of the defendant.

4. The referee found, as matter of law, that the plaintiff could not rescind, because she had taken substantial possession of the premises, and retained occupation thereof from Monday until Thursday.

This we contend was an error on the part of the referee. He ought

not to have literally followed the doctrine laid down in *Hunt* v. *Silk*, 5 East 449. The general principle, that one party cannot rescind a contract unless the parties are put in the same situation in which they stood at the time the contract was entered into, is true. But this must be understood with reference to the subject matter. If it were true in a strict literal sense, no contract could be rescinded after there had been a change of possession, because the parties could not be put in the same situation in which they were before the contract. *Concord Bank* v. *Gregg*, 14 N. H. 338. It is sufficient that the property is returned to the vendor in a reasonable time, and that he is placed substantially *in statu quo*. *Concord Bank* v. *Gregg*, above cited.

5. The plaintiff elected to rescind the contract in a reasonable time, and she has never waived said election or the right to rescind the agreement. Fraud is never to be presumed, and must be duly established by proof; and we submit that the plaintiff would not have exercised due prudence had she attempted to rescind the contract upon the first intimation of a stranger, without any investigation of the circumstances connected therewith. From Monday until the Thursday following is not an unreasonable time for that purpose, especially when no change in the condition of the property or in the situation of the parties has been suggested. And she brings this action, not to recover damages of any party, but simply to recover her money, which she parted with upon the material misrepresentations of Mrs. Haseltine or her agent in regard to the productiveness of said real estate.

6. The action for money had and received is an equitable action, and in general may be maintained wherever the evidence shows that the defendant has received or obtained possession of money belonging to the plaintiff, which he ought in equity and good conscience to refund to him. *Lockwood* v. *Kelsea*, 41 N. H. 185. The action for money had and received can be maintained where a contract is rescinded, to recover back the money paid under it. *Wiggin* v. *Foss*, 4 N. H. 295 ; *Child* v. *Moore*, 6 N. H. 35 ; *Fuller* v. *Little*, 7 N. H. 535 ; *Snow* v. *Prescott*, 12 N. H. 535 ; *Pierce* v. *Duncan*, 22 N. H. 18 ; *Drew* v. *Claggett*, 39 N. H. 431 ; *Jenkins* v. *Thompson*, 20 N. H. 457.

*Morrison & Stanley*, for the defendant.

This case finds that there were no misrepresentations except those concerning the productiveness of the real estate, which appeared in the advertisement. It is not found or claimed that this plaintiff was influenced at all, much less that she bought on the strength of and relying upon those representations ; and the presumption that she did so, if any such would arise, were there no evidence to the contrary, is done away with, as it distinctly appears that she went to Chester before purchasing, was told what the farm was, examined it for herself, and saw fit upon her own judgment, so far as appears, to purchase said real estate and *certain articles of personal property* for one thousand dollars, there being no intimation that said sum was more than a fair

price for what she received.   Consequently there was no fraud prac-
tised upon her by this defendant, and none is, found in this case ; and
all the inference that can fairly be drawn from this case is, that she
saw the advertisement, and was by it induced to go and examine the
farm and personal property ; and she bought after she had examined
the property, and knew, or had such information as would put a person
of ordinary capacity on inquiry, that the advertisement was untrue,—so
that it cannot be said she bought on the strength of the representations
there made.   It is not claimed that there were false representations
made at the time of the purchase, nor was it then claimed that the
description there made was true.   And if she was further influenced
than simply to be led to examine, even then it cannot be said that the
advertisement was the moving cause of the trade, for she was present,
was informed what the property was, inquired, and examined for her-
self.   But it is assumed by the plaintiff's counsel that she was influ-
enced by it to make the purchase.   Then we say that the plaintiff
moved her goods and took full possession after she had examined and
knew just what the farm was, and then kept possession from Monday
to Thursday, showing that she bought the property for what it actu-
ally was, and that she waived all right to rely on the misrepresen-
tation in the advertisement, if she was ever influenced by it, and was
then estopped to rescind the trade, having taken full possession after
full knowledge, holding it four days, and so became unable to restore
the parties to their original position—the very thing one must do if he
would rescind a contract.   *Hunt* v. *Silk*, 5 East 449 ; 2 Parsons on
Con. 192 and note ; 2 Parsons on Con. 277 and note *q*.

   If one rescinds on the ground of fraud, he must do so in a reasona-
ble time, and at once on discovering the fraud.   2 Parsons on Con., p.
278, note *t ; Perley* v. *Balch*, 23 Pick. 286.   One wrong cannot justify
another, and diligence and good faith are incumbent even when there
has been a deviation from the same on the other side ; and we submit
that this attempt to rescind was neither made in a reasonable time nor
upon discovery of the fraud.   There is no doubt that if one keeps and
uses the goods after the fraud is discovered, he will thereby make
them his own, and cannot subsequently throw them on the hands of
the vendor—*Garland* v. *Spencer*, 46 Me. 528—although entitled to
give the fraud in evidence, as proof of failure of consideration, in any
suit brought for the purchase-money.   *Conner* v. *Henderson*, 15 Mass.
322 ; *Harrington* v. *Stratton*, 22 Pick. 510.   And some of the cases
take the ground that the contract cannot be rescinded or its operation
annulled, even when steps are taken for the purpose as soon as the
fraud is ascertained, if anything has occurred to prevent the restora-
tion of the parties to their original position, or the return of what has
been received in the plight in which it was when delivered.   *Stevens* v.
*Hyde*, 32 Bar. 171 ; *Barton* v. *Simmons*, 14 Ind. 49 ; *Shepherd* v. *Tem-
ple*, 3 N. H. 457 ; *Leichenan* v. *Horney*, 12 Ill. 336 ; *Downer* v. *Smith*,
32 Vt. 1.   If one, with a full knowledge of the facts, does any act
which amounts to a ratification, he cannot rescind.   *Weeks* v. *Robie*, 42

N. H., and cases cited. If the contract has been part executed, the remedy must be upon the contract. *Stevens* v. *Cushing*, 1 N. H. 17, and cases cited; *Hunt* v. *Silk,* before cited. The action for money had and received, we submit, does not lie.

In *Stevens* v. *Cushing*, 1 N. H. 17, before cited, it was held that where the contract had been partly executed, an action for money had and received did not lie, but that the remedy must be upon the contract. In 1 Smith's L..C., part 1, 334, Hare & Wallace's Notes, we find,—" It is thoroughly well settled that, when there have been fraudulent acts or representations on the part of the vendor in a point material to the contract, the vendee is entitled to avoid the sale, *ab initio*, and may either rely on the fraud as a defence to a suit for the purchase-money, or make it the ground of an action on the case, in which he may recover back the price of the goods, if paid, and compensation for any special injury which has resulted from the deceit." This case finds that this money was *paid* to Haseltine ; it then became his money and so remained, whether in Noyes's hands or anybody else's ; Noyes then became debtor to Haseltine, or, if the plaintiff wishes, the agent of Haseltine. Noyes then owes Haseltine for this $300 as for any other debt. And how comes it that he becomes liable to the plaintiff ? There is no contract, express or implied, between them. Is it said that he owed Haseltine $300 until Thursday night, and then became debtor to Manahan, *non constat*, because this contract was rescinded (admitting that it could then be) ? If there was then a rescission, Haseltine became debtor to this plaintiff, and the money could have been reached by trustee process. But if Noyes became Haseltine's agent in this regard, then his acts were the acts of the principal, his possession the possession of the principal, and the money in dispute was in possession of the principal, Haseltine, and the action must be against him and not against Noyes.

We submit that this action does not lie : 1. Because there was no fraud practised upon this plaintiff, and she had no right to rescind. 2. She cannot rescind because she purchased upon examination, and information of outside, disinterested parties ; and the doctrine of *caveat emptor* applies. 3. Because, with full knowledge, she purchased and took full possession and paid part of the purchase-money. 4. Because she took and held possession an unreasonable length of time after such information as would put a reasonable person on inquiry, and thus made it impossible to restore the parties and property to their original position. 5. Because an action for money had and received does not lie against Noyes on the case stated.

FOSTER, J. We infer from the case sent up that the plaintiff purchased the property, relying upon the " material misrepresentations" contained in the newspaper, and not upon her own personal examination. The case finds, as we understand it, that the plaintiff was a resident of Massachusetts; that she saw the advertisement there, that she negotiated with the plaintiff's agent there for property situated

in Chester in this State, and that she came to Chester "upon a Monday morning. to complete those transactions" concerning which, as to the price and mode of payment, the terms had been settled elsewhere,—being, for the first time, informed of the fraud while moving in her goods. It does not appear, as suggested by the defendant's counsel in their brief, that "she went to Chester before purchasing, was told what the farm was, examined it for herself, and saw fit upon her own judgment" to purchase; nor can any inference be drawn, as suggested, that she was induced by the advertisement to go and examine the farm, and that she bought it after she had examined it, and knew (or had such information as would put a person of ordinary capacity on inquiry) that the advertisement was untrue.

The discrepancy in the views of counsel is material, and the referee may be called upon to supply any matter of fact not disclosed which counsel may require. But in the aspect of the case as we must at present regard it, the only question seems to be whether the plaintiff, being deceived by the false representations of Mrs. Haseltine or her agent, undertook within a reasonable time to rescind the contract, and brought herself within the well settled rules applicable to such a case.

Contracts entered into on fraudulent representations are voidable at the election of the party defrauded, as well in regard to real as personal estate. *Concord Bank* v. *Gregg*, 14 N. H. 331. It is sufficient, to bring the plaintiff within the rule as to rescission, that she should offer to return the property in a reasonable time, provided, by such return or offer to return it, the vendor is placed substantially *in statu quo*. *Concord Bank* v. *Gregg*, before cited.

The plaintiff had scarcely taken possession when she was first informed of the fraud. Her goods were then being removed to the place. She had a right to take and retain the possession for a time reasonably sufficient to enable her to make inquiry; and having done so, she might then return the property.

Whether the time from Monday till Thursday, when she notified Mrs. Haseltine that she should not keep the farm, was such reasonable time, is a question of fact for the referee, and not a question of law for this court. Apparently, the vendor had lost no substantial advantage, and the vendee had evidently acquired no substantial profit from her temporary possession. Whether the plaintiff had done all that could reasonably be required in the circumstances, was a question for the referee. If she had done so, this action is not misconceived. *Concord Bank* v. *Gregg*, before cited.

The principle is almost elementary that assumpsit for money had and received will lie where a contract is rescinded, to recover the money paid under it. It certainly is not for Mrs. Haseltine or her husband to complain that the plaintiff, instead of seeking to obtain damages for the deceit, seeks only to recover the money which the defendant, in equity and good conscience, ought not to retain.

The objection that the five hundred dollar bill, having been *paid* to Haseltine and then passed to the defendant to be changed, became

thereby absolutely the money of Haseltine in the hands of the defendant, as his agent, and so capable of being reached, if at all, only by trustee process, is purely technical and quite unavailable.

It appears from the case that the bill was passed to Haseltine, not as the money of Haseltine or his wife, but only for the purpose of taking three hundred dollars out of it. This Haseltine could not do, and there was the end of that matter. The bill was then given to the defendant ; no matter whether by Haseltine or by the plaintiff,—it was the plaintiff's bill ; and if Haseltine gave it to the defendant, he transferred the possession as the plaintiff's agent for that purpose. It was given to the defendant in order that he might change it, and pay three hundred dollars to Haseltine and the remainder to the plaintiff. It was the plaintiff's money—all of it—in the defendant's hands, until, as the agent of the plaintiff, he should pay three hundred dollars to Haseltine. Not having paid it, and the contract upon which the payment depended having been rescinded, it remains the money of the plaintiff, in the defendant's hands, which, *ex æquo et bono*, he has no right to retain.

The defendant's position is not unlike that of a stake-holder of a legal wager, at common law, which position Lord ELLENBOROUGH likened to that of an arbitrator, saying,—" Now an arbitrator's authority, before he has made his award, is clearly countermandable ; and here, before there has been a decision, the party has countermanded the authority of the stake-holder." *Eltham* v. *Kingsman*, 1 B. & Ald. 683.

Here was this defendant, a sort of stake-holder or arbitrator, at any rate a middle-man, entrusted by the owner of five hundred dollars with authority to pay three hundred thereof to Haseltine ; but before payment, the authority of the defendant was countermanded.

With these suggestions, the report of the referee must be recommitted for his action, in view of this declaration of the law.